UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

================================================================

**CASE NO.:** CV 14-07870 SJO (AJWx)           **DATE:** July 21, 2015

**TITLE:**     Zejing Shen v. Gotham Corporate Group, Inc., et al.

================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                               Not Present
Courtroom Clerk                                Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**          **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                    Not Present

================================================================
**PROCEEDINGS (in chambers): ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS GOTHAM CORPORATE GROUP, INC., GOTHAM CAPITAL MANAGEMENT, INC., GOTHAM CONSTRUCTION, INC., GOTHAM MANAGEMENT GROUP INCORPORATED, GOTHAM DESIGN BUILD, INC., ERIK COFFIN, CATHERINE ZHENG, AND LANTASTIC GROUP, INC.'S MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** [Docket Nos. 38, 40]

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff Zejing Shen's ("Mr. Shen") First Amended Complaint ("FAC"). Defendants Catherine Zheng ("Ms. Zheng") and Lantastic Group, Inc. ("Lantastic") (collectively, the "Lantastic Defendants") filed their Motion to Dismiss ("Lantastic Motion") on February 23, 2015. Plaintiff filed his Opposition to the Lantastic Defendants' Motion ("Opposition to Lantastic Motion") on March 23, 2015, to which they replied on March 30, 2015. Defendants Gotham Corporate Group, Inc. ("Gotham Corporate Group"), Gotham Capital Management, Inc. ("Gotham Capital Management"), Gotham Construction, Inc. ("Gotham Construction"), Gotham Management Group Incorporated ("Gotham Management Group"), Gotham Design Build, Inc. ("Gotham Design Build"), and Erik Coffin ("Mr. Coffin") (collectively, "Gotham") filed their Motion to Dismiss ("Gotham Motion") on February 27, 2015. Plaintiff filed an Opposition to Gotham's Motion (Opposition to Gotham Motion") on March 23, 2015, to which they replied on March 30, 2015.[1] The Court found these matters suitable for disposition without oral argument and vacated the hearings set for April 13, 2015. *See* Fed. R.

---

[1] Gotham's Motion to Dismiss is 23 pages long. The Standing Order limits Motion briefs to 20 pages. (Initial Standing Order ¶ 21, ECF No. 31.) The Court disregards the portion of the Motion after page 20. Mr. Shen's Opposition to Gotham Defendants' Motion to Dismiss is 22 pages long. The Standing Order limits Opposition briefs to 20 pages. (Initial Standing Order ¶ 21, ECF No. 31.) The Court disregards the portion of the Opposition after page 20. Gotham's Reply in Support of their Motion to Dismiss is 11 pages long. The Standing Order limits Reply briefs to 5 pages. (Initial Standing Order ¶ 21, ECF No. 31.) The Court disregards the portion of the Reply after page 5.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-07870 SJO (AJWx)</u>   DATE: <u>July 21, 2015</u>

Civ. P. 78(b). For the reasons stated below, the Court **GRANTS in part and DENIES in part** the Motions.

I.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff alleges the following. In 2012, Mr. Shen utilized the services of Ms. Zheng as a real estate broker to locate a suitable location for a home on his behalf. (FAC ¶ 18, ECF No. 37.) After Mr. Shen paid money to purchase the Property in Beverly Hills, California (the "Property"), Ms. Zheng represented to Mr. Shen that she knew of a large company with many employees and decades of experience in design, architecture, government permitting, construction, and property management, and recommended that Mr. Shen contact Gotham. (FAC ¶ 18.) At the time, Mr. Shen had already located an architect. (FAC ¶ 18.) From December 2012 to March 2013, Mr. Shen and his assistants communicated with his architect to develop a design for a custom home project. (FAC ¶ 19.) At the time, Mr. Shen continued to involve Ms. Zheng in the project. (FAC ¶ 19.) For example, on March 21, 2013, when the architect, who was working on the project prior to Gotham, completed his concept designs, he emailed them to Ms. Zheng, who in turn emailed the designs to Mr. Shen and his assistants. (FAC ¶ 20.)

From March 21 to March 31, 2013, Ms. Zheng, through email messages and telephone calls, urged Mr. Shen once again to consider contracting Gotham to re-do the designs from scratch. (FAC ¶ 21.) Ms. Zheng represented that Gotham was qualified to handle design, architecture, contracting, construction, property management, engineering, and permitting. (FAC ¶ 21.) Specifically, Ms. Zheng represented to Mr. Shen and his agents that:

1. Gotham was a well-known, established company that had been serving the Los Angeles real estate community for several years.
2. Switching to Gotham would result in designs far superior to the ones Mr. Shen had received from the original architect.
3. Contracting with Gotham would be the fastest and best way to complete the project because Gotham employed experienced house designers, architects, contractors, property managers, engineers and other experts who could assist Mr. Shen with demolishing the existing residence and then designing and obtaining permits for, and building, a new custom residence.
4. Mr. Coffin, a Gotham representative, could be trusted with complete control of the project. (FAC ¶¶ 21-22.)

Ms. Zheng, thereafter, introduced Mr. Shen to Mr. Coffin and they jointly represented to Mr. Shen that Gotham had the capabilities to develop the Property in a manner consistent with his desires. (FAC ¶¶ 12, 22.)

On March 25, 2013, Gotham sent Mr. Shen a document entitled "Proposal for Architectural Services" (the "Proposal"). (FAC ¶ 25.) Lee Stone ("Mr. Stone"), a Canadian-based architect

CASE NO.: **CV 14-07870 SJO (AJWx)**　　　DATE: **July 21, 2015**

initially hired by Gotham to prepare the Property's development plans, signed the Proposal as "Director of Architecture & Development" of Gotham Capital Management. (FAC ¶¶ 24, 25.) The Proposal related to the "architectural services for the demolition of an existing single family home and construction of a new Duel [sic] Family 20,000 SF residence at the project site." (FAC ¶ 25.) The proposal stated: "Total Architectural Fee – Not to Exceed $498,000.00" and provided the following timeline:

| | |
|---|---|
| Retainer | Start |
| Schematic Design Phase | Week 2 |
| Design Development Phase | Week 2-4 |
| Construction Documentation Phase | Week 4-8 |
| Permitting Phase | Week 9 |
| Construction Observation Phase | Ongoing |

(FAC ¶ 26.) Mr. Shen authorized Ms. Zheng to sign Gotham's proposal on his behalf, which she did on March 31, 2013. (FAC ¶ 27.)

On April 1, 2013, Mr. Coffin published a video, on YouTube, acknowledging Gotham's new contract with Mr. Shen. In the video, Mr. Coffin stated the following:

> We had an unbelievable day today . . . . We got a contract signed today for a 20,000 square foot estate that we design [sic]. Gotham Architecture. Our in house architect Lee Stone. Who had his own practice in Palm or, not Palm Beach but Pebble Beach for 14 years. A very gifted artist. Secured us that deal. Well, we brought it in house but he slam dunked it with an amazing design . . . . Nothing like being a human being that gets to create at a high level when you have wealthy individuals to back you.

(FAC ¶ 28.) Shortly after entering into the architecture contract with Gotham, Mr. Shen wired $500,000.00 to Lantastic, a company owned and controlled by Ms. Zheng, for disbursement to Gotham for the architectural services. (FAC ¶ 29.) On April 3, 2013, Mr. Coffin published another online video in which Mr. Coffin once again acknowledged his contract with Mr. Shen: "Got contracts today for doing a 20,000 square foot new home at 1004 Rexford. We got the architectural contract. And the construction contract. It's a $10,000,000 budget house." (FAC ¶ 30.)

Throughout 2013, Gotham missed the deadlines it had promised Mr. Shen it would meet. (FAC ¶ 31.) The schematic design phase was not completed within two weeks; the design development phase was not completed within four weeks; the construction documentation phase was not completed within eight (8) weeks; and the permitting phase was not completed within nine (9) weeks. (FAC ¶ 31.) Most of that work would never be completed. (FAC ¶ 31.) Gotham

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 14-07870 SJO (AJWx)          DATE: July 21, 2015

continued to issue "progress invoices" to Mr. Shen, which he directed Ms. Zheng to pay using the funds he had wired to Lantastic. (FAC ¶ 32.) Ms. Zheng used these funds to pay Gotham. (FAC ¶ 32.) On May 27, 2013, Gotham issued a progress invoice to Mr. Shen, reflecting that the design development phase, which Gotham was required to complete by week four, was only 50% complete. (FAC ¶ 33.) The invoice stated that the final design would be ready within 10-14 days. (FAC ¶ 33.) On May 31, 2013, Mr. Coffin sent an email to Mr. Shen stating,

> I am not happy with how this process is unfolding . . . . I am asking for your permission to make some executive decisions . . . . To deliver what you deserve, I must be able to manage this project in-house with direct observation and my personal guidance. I never planned on having this project managed in Toronto.

(FAC ¶ 35.) Mr. Shen responded to Mr. Coffin, through his assistant, telling him he is authorized to carry out the executive decision-making power he requested. (FAC ¶ 35.)

During the summer of 2013, Mr. Coffin prevented the money Gotham received from Mr. Shen from being sent to Mr. Stone for his architectural services. (FAC ¶ 36.) A conflict ensued between Mr. Coffin and Mr. Stone over funds, resulting in Mr. Stone leaving the project and forcing the project back to square one. (FAC ¶ 36.) Without telling Mr. Shen, Mr. Coffin began searching for new architects. (FAC ¶ 36.) During this time, Mr. Coffin and Gotham continued to draw large sums of money from Mr. Shen under the guise of progress reports. (FAC ¶ 36.) Ultimately, Mr. Coffin and Gotham used all of Mr. Shen's initial $500,000.00 payment without having made any substantial progress. (FAC ¶ 36.)

In July and August of 2013, Mr. Coffin continued to represent to Mr. Shen that Gotham was moving forward to the next phases of the project. (FAC ¶ 37.) On August 5, 2013, Gotham sent Mr. Shen a "Soft Demolition and Landscape Removal Agreement," requesting immediate payment of $91,344.09. (FAC ¶ 37.) Mr. Shen paid the full amount to Gotham. (FAC ¶ 37.) On October 2, 2013, Gotham sent Mr. Shen a contract for "Engineering sub trades," requesting a one-time payment of $397,124.92. (FAC ¶ 38.) Mr. Shen paid the full amount to Gotham. (FAC ¶ 38.) The contract contained an attachment listing amounts to be paid to certain sub-consultant firms, including Ambien Environmental, Inc., Schieck Geo and Exploration, Lewis Ross Associates, Inc., Coffman Engineering, and Coast Engineering. (FAC ¶ 38.) Gotham did not make any payments to those firms and failed to perform the services in the contract. (FAC ¶ 38.)

In October and November 2013, Mr. Coffin convinced Mr. Shen to send his representatives to meet with a different designer proposed by Gotham and to pay additional monies to Gotham. (FAC ¶ 39.) After he paid, Mr. Shen subsequently learned that Defendants terminated this "new" designer without any notice to Mr. Shen. (FAC ¶ 39.) Mr. Shen, not knowing that the new designer had already been terminated, sent an email to Mr. Coffin suggesting changes to the design which he would be willing to consider in an effort to obtain approval for the project.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 14-07870 SJO (AJWx)   **DATE:** July 21, 2015

(FAC ¶ 39.) In late 2013, when Gotham failed to produce final architectural documents to Mr. Shen, Mr. Shen and his assistants contacted Messrs. Coffin and Stone and learned that there had been a conflict between them, that Mr. Coffin, Gotham, and Ms. Zheng had terminated Mr. Stone, and that Mr. Stone was actually a Canadian designer with no license to practice in California. (FAC ¶ 40.) Further, while Mr. Coffin claimed that he had paid $350,000 to Mr. Stone for services rendered, Mr. Shen learned that Mr. Coffin had actually transferred a substantially smaller sum to Mr. Stone and had retained money for Mr. Coffin's own benefit, without providing any services of value to Mr. Shen. (FAC ¶ 40.)

In late 2013, Mr. Coffin and Gotham admitted that they had not provided Mr. Shen with truthful information and apologized for their failures and promised to complete the work for a capped fee of $400,000 and stated that they would have approval from the City of Beverly Hills to allow construction to begin in January, 2014. (FAC ¶ 42.) In December 2013, Mr. Coffin published a video filmed at the site of the project where he stated:

> Gotham Corporate Group is a full service construction, real estate, property management, architectural firm. With this house, we are in Beverly Hills for a client out in Bejing [sic], China. We are in the process of soft demolition. We've torn out all the landscape and trees. We're getting ready to take the pool out and then the house will come down. After that we'll be building a 20,000 square foot home, where we do have the architectural contract. We also have the construction contract, interior decorating, and the landscape design . . . . Sometimes with construction and design and architecture you have egos. You have the contractor getting involved with the architect – they're butting heads. But because we control everything, we have everything under one umbrella. We're able to take that stress and that worry out of the client's life.

(FAC ¶ 43.) On December 13, 2013, Mr. Coffin appeared on a San Francisco based Chinese television program, taking credit for Mr. Shen's project, including acquisition of the Property. On the program, Mr. Coffin stated the following:

> We are very unique. There is no other company like us. We have an in house commercial and residential construction company, in house commercial and residential property management, as well as real estate for commercial and residential real estate assets as well . . . . Our firm has been focused on the Chinese Market and buyers that are coming from China as well as local Chinese residents . . . . We have a client in Bejing [sic] – a very high net worth prominent individual – that has sought our services out in Beverly Hills. We are actually building a 22,000 square foot home for this client. We are doing the architecture, construction, we are also doing the landscape architecture, the interior design, and we represented the acquisition of that asset . . . .

| | |
|---|---|
| **CASE NO.:** CV 14-07870 SJO (AJWx) | **DATE:** July 21, 2015 |

(FAC ¶ 44.)

In February 2014, Mr. Coffin sent an email to Mr. Shen indicating that changes would not be necessary, that the project had already been approved by the City of Beverly Hills, and further stating that Mr. Coffin would be able to control the construction budget for $600 per square foot. (FAC ¶ 45.) During a trip to Los Angeles in April 2014, Mr. Shen attended a design hearing before the City of Beverly Hills. (FAC ¶ 46.) During the meeting, he learned that the representations by Mr. Coffin had been substantially untrue. (FAC ¶ 46.) It was Mr. Shen's understanding from what transpired at the design meeting that the City of Beverly Hills had no intention of approving the design. (FAC ¶ 46.) Further, although Mr. Coffin and Gotham had charged $91,344.09 to demolish the existing residence in August, 2013, it was Mr. Shen's understanding that the demolition had not been approved. (FAC ¶ 46.) Mr. Shen then asked Mr. Coffin and Ms. Zheng and Gotham to refund the money that had been paid to them. (FAC ¶ 47.) Defendants claimed that they had transferred the funds to various sub-contractors, and they were, therefore, financially unable to reimburse Mr. Shen for the project. (FAC ¶ 47.) On May 4, 2014, Mr. Coffin sent an email to Mr. Shen's representative, acknowledging the failure of the project and attempting to defend Gotham's conduct, including a false statement that Mr. Coffin had spent $150,000.00 of his own money on Mr. Shen's failed project. (FAC ¶ 48.)

On October 10, 2014, Plaintiff filed his Complaint. On February 9, 2015, Plaintiff filed his FAC, alleging four causes of action: (1) breach of contract (FAC ¶¶ 49-57); (2) breach of fiduciary duty (FAC ¶¶ 58-62); (3) money had and received (FAC ¶¶ 63-65); and (4) fraud (FAC ¶¶ 66-73). In their Motions, the Gotham and Lantastic Defendants move to dismiss the FAC for failure to join indispensable parties under Federal Rule of Civil Procedure 12(b)(7) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The crux of Defendants' 12(b)(7)Motions is that Plaintiff has not joined Qian Shen and Zichun Chen as plaintiffs necessary to the instant litigation. (*See generally* Lantastic Mot., ECF No. 38; Gotham Mot., ECF No. 40.) From information in Plaintiff's Oppositions and Defendants' Motions, Qian Shen and Zichun Chen were the titleholders to the Property. (*See generally* Lantastic Mot.; Gotham Mot.; *see also*, Plaintiff's Opposition to [Lantastic Mot.] ("Lantastic Opp'n") 3, ECF No. 42; Plaintiff's Opposition to [Gotham Mot.] ("Gotham Opp'n") 3, ECF No. 43.) Qian Shen also appears to be the party who entered into the written agreements with the Gotham Defendants. (FAC, Exs. C-D.) In Plaintiff's Oppositions, Mr. Shen is characterized as the financier and the individual who was "spearheading" the project. (Opp'n. 3.) The FAC is silent as to the relationship between Mr. Shen, Qian Shen, and Zichun Chen. (*See generally* FAC.)

\\
\\
\\

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 14-07870 SJO (AJWx)</u>          **DATE:** <u>July 21, 2015</u>

II.     **DISCUSSION**

     A.     <u>Motion To Dismiss for Failure to Join a Party Under Federal Rule of Civil Procedure 12(b)(7)</u>

Federal Rule of Civil Procedure 12(b)(7) allows a defendant to assert a defense to a claim for relief by moving to dismiss for plaintiff's failure to join a party under Federal Rule of Civil Procedure 19 ("Rule 19"). Fed. R. Civ. P. 12(b)(7). As outlined by the Ninth Circuit, dismissal under Rule 19 demands a three-step analysis to determine whether: (1) the absent party is necessary (i.e., required to be joined if feasible) under Rule 19(a); (2) if so, whether it is feasible to order that the absent party be joined; and (3) if joinder is not feasible, whether the absent party is indispensable (i.e. the case cannot proceed in their absence) such that the action must be dismissed. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). "In determining whether the [absent party] is necessary under Rule 19, [the Court] consider[s] whether, in the absence of the [absent party], complete relief can be accorded." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002). Application of Rule 19 requires a practical and fact-specific inquiry. *Dawavendewa*, 276 F. 3d at 1154 (emphasis added).

Plaintiff claims in his Oppositions that Qian Shen and Zichun Chen are not indispensable within the purview of Rule 19. Nevertheless he has offered to amend his complaint to include them as parties. In light of Plaintiff's offer to amend the Complaint to add Qian Shen and Zichun Shen (*see* Lantastic Opp'n 6; Gotham Opp'n 6), Defendants' Motions to Dismiss for failure to join a party under Rule 19 are **DENIED as MOOT**.[2]

     B.     <u>Motion To Dismiss for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

---

[2] Plaintiff's offer to join the parties comes late. Defendants were compelled to bring the instant Motions even after the issue of whether Qian Shen and Zichun Chen were necessary parties was first raised in response to the initial Complaint. (*See, e.g.*, [Gotham Defendants'] Motion to Dismiss 2, ECF No. 17.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 14-07870 SJO (AJWx)     **DATE:** July 21, 2015

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, Plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct," the complaint is subject to dismissal. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663.

Plaintiff asserts all of his causes of action against all Defendants. (*See generally* FAC ¶¶ 49-73.) The Court considers each count as to each Defendant in turn.

 1. Breach of Contract

"To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998).

 a. Lantastic and Catherine Zheng

The Court cannot find any allegations that support the existence of a contract between Plaintiff and Lantastic or Ms. Zheng. The FAC includes details regarding the nature of their relationship, but does not allege a contractual agreement. Plaintiff has also offered "to submit an amended pleading excluding [Ms.] Zheng and Lantastic from the First Claim for Relief for Breach of Contract." (Lantastic Opp'n 7.)

In light of deficiencies in the FAC and Plaintiff's offer, Defendants Lantastic and Ms. Zheng's Motion is **GRANTED** as to Plaintiff's breach of contract claim.

 b. Gotham

Gotham argues that Plaintiff lacks standing to sue for breach of contract. The Court disagrees. To establish standing, a plaintiff must show "(1) he or she has suffered an 'injury in fact;' (2) there is a 'causal connection between the injury' and defendant's complained-of conduct; and (3) it is likely 'that the injury will be redress by a favorable decision.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F. 3d 939, 956 (9th Cir. 2011) (citations omitted). Economic injury is generally sufficient to confer standing. *See, e.g., Cent. Ariz. Water Conservation Dist. v. United States EPA*, 990 F.2d

| | |
|---|---|
| **CASE NO.:** <u>CV 14-07870 SJO (AJWx)</u> | **DATE:** <u>July 21, 2015</u> |

1531, 1537 (9th Cir. 1993) ("Pecuniary injury is clearly 'a sufficient basis for standing.'") (citations omitted).

Here, Plaintiff's allegations show that Plaintiff suffered direct economic injury sufficient to confer standing. The FAC alleges: (1) Gotham sent [Plaintiff] and his assistants a document entitled 'Proposal for Architectural Services[,]" (FAC ¶ 25); (2) "[Plaintiff] authorized [Ms.] Zheng to sign Gotham's proposal on [Plaintiff's] behalf," (FAC ¶ 27); (3) Plaintiff paid Gotham "$897,124.92 to perform these services[,]" (FAC ¶ 3); and (4) "Defendants breached the agreements by failing to provide any architectural or construction services of value[,]" (FAC ¶ 51).

Accordingly, the Gotham Defendants' Motion to Dismiss Plaintiff's breach of contract claim is **DENIED**.

   2. <u>Breach of Fiduciary Duty</u>

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820-21 (2011) (citations omitted).

"A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Gilman v. Dalby*, 176 Cal. App. 4t 606, 613 (2009). This "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Id.* at 613-14. "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." *Wolf v. Super. Ct.*, 107 Cal. App. 4th 25, 30 (2003). "[A] plaintiff cannot turn an ordinary breach of contract into a breach of fiduciary duty based solely on the breach of the implied covenant of good faith and fair dealing contained in every contract." *Gilman* at 614.

    a. <u>Lantastic</u>

Lantastic and Ms. Zheng did not move to dismiss Plaintiff's breach of fiduciary duty claim. Accordingly, Lantastic and Ms. Zheng have waived any right to file a 12(b)(6) motion as to this claim.

\\
\\

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 14-07870 SJO (AJWx)**          DATE: **July 21, 2015**

        b.      <u>Gotham</u>

Gotham argues that Plaintiff has not sufficiently alleged a fiduciary relationship because "no fiduciary relationship exists in an ordinary business setting . . . between a building contractor and the person who engages his services." (Gotham Mot. 15-16.) Plaintiff argues that "where a contractor promises to engage and pay subcontractors on a principal's behalf, an agency relationship is formed and gives rise to fiduciary duties." (Gotham Opp'n 9.)

Plaintiff directs the Court to *What 4 LLC v. Roman & Williams, Inc.*, 2012 WL 1815629 (N.D. Cal. May 17, 2012) and *Bard Water Dist. v. James Davey and Assocs., Inc.*, 2014 WL 1796709 (S.D. Cal. May 5, 2014) to support his agency/principal argument. In *What 4 LLC*, the plaintiff contracted with defendants to provide architectural and design services to complete a youth hostel. *Id.* at *1. The complaint contained allegations that plaintiff hired defendant to act as their agent in the bidding and negotiation with suppliers and defendant had the authority to purchase furniture, fixtures, and equipment, on plaintiff's behalf. *Id.* The district court found that plaintiff had sufficiently alleged an agent/principal relationship between plaintiff and defendants. *Id.* at *5. In *Bard Water Dist.*, the Defendants agreed to serve as "Project Engineer," which included their duty to supervise and inspect the work of the general contractor and carry out specific testing requirements. *Bard Water Dist.* at *1. The district court found that these allegations were sufficient. *Id.* at *5 (citing *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410-11 (2007) ("Because agency creates a fiduciary relationship as a matter of law, [p]laintiff has sufficiently alleged the existence of a fiduciary duty by alleging [d]efendants acted as its agent while serving as Project Engineer, regardless of whether they had a contractual agreement.")

In both *What 4 LLC* and *Bard Water Dist.*, the defendants were acting on the plaintiff's behalf through the exercise of executive authority (e.g. bidding and negotiation with suppliers or supervising the general contractor). Here, the relationship between Plaintiff and Gotham resembles that of an agent and principal similar to *What 4 LLC* and *Bard Water Dist.* once Gotham, specifically Mr. Coffin, elicited from Plaintiff "executive" authority, (FAC ¶ 35), to pay subcontractors on Plaintiff's behalf (FAC ¶ 38). While the relationship between Plaintiff and Gotham began as an arms length business transaction, the FAC contains sufficient allegations showing that it later morphed into that of a principal and agent, resulting in fiduciary responsibility.

Having alleged a fiduciary relationship, the Court considers whether the pleading supports a claim of breach of a duty. After Gotham asked for permission to "make some executive decisions" (FAC ¶ 35), Defendants sent Plaintiff a contract for "'Engineering sub trades,' requesting a one-time payment of $397,124.92." (FAC ¶ 38.) The contract included an attachment listing amounts to be paid to payments that to "certain subconsultant firms." (FAC ¶ 38.) Plaintiff paid the full amount to Gotham, however, Plaintiff alleges that Gotham failed to make any payments to these subconsultant firms. (FAC ¶ 38.) The Court finds that these allegations are sufficient to allege a breach of fiduciary duty and resulting damages.

**CASE NO.:** <u>CV 14-07870 SJO (AJWx)</u>   **DATE:** <u>July 21, 2015</u>

Accordingly, the Gotham's Motion is **DENIED** as to Plaintiff's breach of fiduciary claim.

      3.    <u>Money Had and Received</u>

The elements of a claim for money had and received are: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 459 (1997). "[I]n order for plaintiff recover in such action she must show that definite sum, to which she is justly entiteld, has been received by defendants." *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1047 (N.D. Cal. 2010). A plaintiff must prove that the defendant received "money that was intended to be used for the benefit of" the plaintiff. Judicial Council of California Civil Jury Instruction 370.

Plaintiff alleges that Gotham was paid the sum of $897,124.92 to perform various services for Plaintiff. (FAC ¶ 3.) Next, Plaintiff alleges that Gotham failed to complete any of those services and instead kept the money for its own benefit (FAC ¶¶ 3, 40.) Accordingly, Gotham's Motion is **DENIED**.

Once again, Lantastic and Ms. Zheng have not contested Plaintiff's claim for money had and received. Accordingly, Lantastic and Ms. Zheng waived any right to file a 12(b)(6) motion as to this claim.

      4.    <u>Fraud</u>

The elements of fraud are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity or scienter; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (2003). Each element must be alleged with particularity. *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 156 (1996).

Plaintiff puts forth two theories to meet the first element of misrepresentation. The Court addresses each of these in turn. First, Plaintiff alleges that Ms. Zheng falsely represented to Plaintiff the following statements inducing him to enter into an contract with Gotham.

1. Gotham was a well-known, established company that had been serving the Los Angeles real estate community for several years;
2. Switching to Gotham would result in designs far superior to the ones Plaintiff had received from the original architect;
3. Contracting with Gotham would be the fastest and best way to complete the project because Gotham employs experienced in house designers, architects, contractors, property managers, engineers and other experts necessary to assist Plaintiff with demolishing the existing residence and then

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 14-07870 SJO (AJWx)**　　　　DATE: **July 21, 2015**

        designing and obtaining permits for, and building, a new custom residence; and
4.     Mr. Coffin is an honest businessperson who can be trusted with complete control of the project. (FAC ¶ 67.)

The statements regarding the reputation of Gotham and Mr. Coffin as well as the benefits of switching to Gotham are representations of opinion and are not actionable. *Rendell v. Scott*, 70 Cal. 514, 514 (1886). Alleged misrepresentations must ordinarily be affirmations of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable fraud. 5 Witkin, *Summary of Cal. Law* (10th ed. 2005) Torts, § 773, p. 1122; *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 1086, 1093 (C.D. Cal. 1999). The misrepresentation must also ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud. *Id.*

The only statement which is a representation of fact is "Gotham employs experienced in house designers, architects, contractors, property managers, engineers[,] and other experts." The FAC alleges that these statements were made by Ms. Zheng and not by Gotham itself. Accordingly, these statements do not support a fraud claim against Gotham

Next, Plaintiff alleges that Ms. Zheng and Gotham did not disclose Ms. Zheng's financial relationship with Gotham whereby Ms. Zheng "funneled" clients to Gotham for a "high percentage commission payment for any funds collected by Gotham from those clients." (FAC ¶¶ 16-17, 68.) "[T]he elements of an action for fraud . . . based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing W. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612 (1992).

This allegation is sufficient to show misrepresentation. As stated above, Plaintiff has sufficiently alleged a fiduciary relationship between himself and Ms. Zheng, as well as, with Gotham. *Hobart v. Hobart Estate Co.*, 26 C. 2d 412, 433 (1945) (liability may be imposed for concealment or nondisclosure where the defendant is in a fiduciary or other confidential relationship that imposes a duty of disclosure). Plaintiff has alleged that the nature of this relationship was concealed in order to induce Plaintiff to engage Gotham's business. (FAC ¶¶ 16-17, 27.) Although, Plaintiff has not alleged that had he known about the agreement, he would not have entered into the contract, this can be reasonably inferred from the Complaint.

Finally, Plaintiff alleges that Gotham misrepresented the progress of the project in order to induce additional payments from Plaintiff. (FAC ¶ 69.) Specifically, Plaintiff alleges that Gotham sent him

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 14-07870 SJO (AJWx)          DATE: July 21, 2015

a progress report claiming that the "design development phase was 50% complete." (FAC ¶ 69.) The statements regarding the progress of project, if falsely made, constitute a misrepresentation of an existing fact.  100 F. Supp. 1086 at 1093.

Accordingly, the Gotham's Motion to Dismiss Plaintiff's fraud claim is **DENIED.**

Again, Lantastic and Ms. Zheng have not contested Plaintiff's claim for fraud.  Accordingly, Lantastic and Ms. Zheng have waived any right to file a 12(b)(6) motion as to Plaintiff's fraud claim. .

III.     RULING

Accordingly, Defendants' Motions are **DENIED IN PART AND GRANTED IN PART**. Plaintiff must file a Second Amended Complaint within 10 days of the issuance of this Order.  Defendants shall file a responsive pleading in strict compliance with this Court's Order within ten (10) days thereafter.

IT IS SO ORDERED